UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - against -                                          CR-05-104(NG)

SHAHAWAR MATIN SIRAJ,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MEMORANDUM OF LAW IN SUPPORT OF PRE-TRIAL MOTIONS


                                                      MARTIN R. STOLAR
                                                      Attorney for Defendant
                                                      351 Broadway
                                                      New York, NY 10013
                                                      (212) 219-1919


                                                      KHURRUM WAHID
                                                      Attorney for Defendant
                                                      (What address & phone?)

1

## PRELIMINARY STATEMENT

The defendant, Shahawar Matin Siraj, stands indicted on four counts arising from his alleged participation in a conspiracy to place a bomb in the 34th Street subway station at Herald Square in Manhattan. He now moves to dismiss one count on constitutional grounds, to force an election on multiplicitous counts, for additional discovery, for the early disclosure of exculpatory and impeaching material, and to suppress a post-arrest statement. This memorandum is submitted in support of those motions.

## 18 U.S.C. §2332f, AS APPLIED TO THIS CASE, VIOLATES THE EQUAL PROTECTION PROVISIONS OF THE 5th and 14th AMENDMENTS

The basis for this Court having jurisdiction in this case over a prosecution for the alleged violation of 18 U.S.C.§2332f(a)(2) is §2332f(b)(1)(E), which provides in pertinent part:

> (b) Jurisdiction - There is jurisdiction over the offenses in subsection (a) if-
> (1)The offense takes place in the United States and -
>
> * * * *
> (E) a perpetrator is a national of another state or a stateless person;

In this case, the defendant is a national of Pakistan and the offense is alleged to have taken place in the United States.

Section 2332f criminalizes terrorist acts by implementing the International Convention for the Suppression of Terrorist Bombings. See H.R. Rep. No. 107-307 (2002 U.S. Code Cong & Admin. News 521). However, by having the statue apply only to non-

2

American citizens, it discriminates on the basis of alienage and fails to provide equal protection of the law and violates the due process clause of the 5th Amendment. See *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), holding that the due process clause of the 5th Amendment embodies the principles of equal protection provided for in the 14th Amendment.

Traditionally, courts confronting state legislative classifications which distinguish on the basis of alienage apply a "strict scrutiny" standard due to the "discrete and insular" minority status of non-citizens. *Graham v. Richardson*, 403 U.S. 365, 371-2 (1971). However, similar federal classifications generally receive a "rational basis" review due to the federal government's unique role over immigration and naturalization. *Mathews v. Diaz*, 426 U.S. 67, 79-83 (1976). Nevertheless, "[t]his is not to say that foreign nationals on our soil are without any protection from federal government action under the equal protection component of the Fifth Amendment". *United States v. Lue*, 134 F.3d 79, 86-87 (2d Cir. 1998). See also *Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976) (striking down a federal regulation denying non-citizens equal access to federal employment positions.

Classifications based on alienage employed in federal legislation must bear a rational relationship to a legitimate governmental interest, *United States v.Lue*, 134 F.3d at 87. See also *Mathews v. Diaz*, 426 U.S. at 84-85 (recognizing a limit to Congress's regulation of aliens) and *City of Cleburne v. Clerburne Living Ctr.*, 473 U.S. 432 (1985) (elaborating on the standard of rational basis review in the context of equal protection challenges).

Congress's asserted reason in criminalizing certain acts through §2332f is the suppression of terrorism through the creation of a "regime of universal jurisdiction" over the enumerated offenses. 147 Cong. Rec. S12448-01, at S12450 (daily ed. Dec. 5,

2001)(statement of Sen. Leahy). In order for such an interest to be furthered by the alienage classification included at §2332(b)(!)(E), and thus be constitutional, there must be a rational correlation between an individual's lack of citizenship and the individual's perpetrating more or more heinous terrorist acts than a citizen perpetrates. Otherwise, the alienage classification would be plainly irrational and capricious, targeting non-citizens solely for their lack of citizenship.

The legislative history of §2332f offers scant justification for the inclusion of the citizenship classification. The Congressional discussions regarding the jurisdictional reach of the statute focus mainly on the vague notion that "the bill would create domestic jurisdiction ... in limited situations where a national interest is implicated, while excluding jurisdiction over acts where the convention does not require such jurisdiction and there is no distinct federal interest served" 147 Cong Rec., supra at S122451.

A statement by Rep. Sensenbrenner suggests that the implication of national interests contemplates not the alienage classification but rather alternative bases for jurisdiction: "[The bill to be passed] enacts a new statute which would criminalize these acts if they have an international nexus, such as the bombing of a foreign embassy located in the United States." 147 Cong Rec. H10358-06, at H10360 (daily ed. Dec. 19, 2001)

The two justifications for the statute mentioned above do not rationally further Congress's intent in suppressing terrorism by the inclusion of the alienage classification. The notion that non-citizens commit more or more heinous crimes than citizens commit lost persuasive merit quite some tie ago. In *Sandifer v. Commonwealth*, 225 S.E. 2d 409 (Va. 1976), the Virginia Supreme Court considered the constitutionality of a statutory presumption that aliens possessing sawed-off shotguns necessarily had offensive

4

or aggressive purposes underlying their possession of the weapons. The court invalidated the presumption under rational basis review, noting that "[w]e see no rational connection between a person's place of birth and his disposition to commit offensive or aggressive acts. Nor do we understand how the removal of his alienage by the process of naturalization would change such disposition if it existed." *Sandiford*, 225 S.E. 2d at 411.

The Second Circuit's holding in *United States v. Toner*, 728 F.2d 115 (2d Cir. 1984) upholding, on equal protection review, a federal law prohibiting possession of firearms by <u>illegal</u> aliens is not inconsistent. The court explicitly noted that illegal aliens, unlike their legal counterparts, "are aliens who have already violated a law of this country" and are thus rationally targeted by the firearm possession statute.

The facts of this case compel a holding akin to *Sandiford* and *Toner*. Here, the defendant, an alien <u>legally</u> in the United States, is indicted for alleged terrorist acts under a statute that does not criminalize similar conduct by citizens of the U.S. There is no reason or rationale justifying the conclusion that his citizenship status alone bears on the culpability of his conduct or the governmental interests served in his prosecution relative to the prosecution of a similarly situated citizen. Furthermore, it does not require a thorough knowledge of American history to recognize that terrorists, unlike §2332f, are equal opportunity with regard to citizenship status, e.g. John Walker Lindh, Timothy McVeigh and Theodore Kaczynski.

Lacking any rational justification, the citizenship discrimination of §2332f cannot withstand even the deferential scrutiny afforded federal alienage classifications under *Matthews*. Thus, this count of the indictment should be dismissed as violative of the 5th Amendment's guarantee of equal protection.

**THE INDICTMENT IS MULTIPLICITOUS AND THE
GOVERNMENT SHOULD BE FORCED TO ELECT ONE COUNT**

An indictment is "multiplicitous when it charges a single offense ... multiple times, in separate counts when, in law and fact, only one crime has been committed. *United States v. Chako*, 169 F.3d 140, 145 (2d Cir. 1999). The test to be applied in this Circuit is that described in *Blockberger v. United States*, 284 U.S. 299 (1932), that is whether each provision requires proof of a fact which the other does not. In this case, the underlying conduct is an alleged conspiracy to place a bomb in the 34th Street subway station.

To begin with, each count of the indictment charges a conspiracy. The elements of this part of the charges for each count is, obviously, identical, i.e., an agreement to something the law prohibits and an overt act in furtherance of the agreement. In addition, each count of the indictment requires proof that interstate commerce would be affected.

Count One, charging a conspiracy to violate of 18 U.S.C. §844(i) requires proof of the use of an explosive to destroy property and actions which are malicious, that is to say, intentionally. The proof would also have to include, based on the indictment, that the property in question was the 34th Street subway station.

Count Two, charging a conspiracy to violate 18 U.S.C. §1993(a)(1), requires proof of wrecking or derailing (by means of a bomb) a "mass transportation vehicle"(property) and doing so wilfully, that is to say, intentionally.

Count Three, charging a conspiracy to violate 18 U.S.C. §1993(a)(3) requires proof of use of a destructive device (explosive) in a facility (property) used for mass transportation (the 34th Street Subway station). The additional element of not having obtained the permission of the MTA to do so can be read as surplusage. The final element

6

of knowing that the activity would wreck a mass transportation vehicle is the same as count Two.

The Fourth count charging a conspiracy to violate 18 U.S.C. §2332f(a)(1)(B) requires proof that an explosive device was to be placed in a mass transportation system with the intent to cause destruction of that system, i.e. the 34th Street subway station. Proof that "such destruction was likely to result in major economic loss" can be considered the same as destruction of property, a subway car or a subway station.

Common to each count is conspiring to place a bomb in the 34th Street subway station to cause damage. Whether the damage is to be caused to a subway car, subway station or mass transportation system (or simply property) is merely a play on words. The evil to be avoided is the risk of prejudicing the jury by suggesting that the "defendant committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). The government should be forced to choose which count to proceed on to avoid the prejudice.

### DISCOVERY OF STATEMENTS

We rely on the argument set out in the affirmation of Martin R. Stolar.

### BRADY & GIGLIO MATERIALS

We rely on the argument set out in the affirmation of Martin R. Stolar.

## THE DEFENDANT'S POST-ARREST STATEMENT
## SHOULD BE SUPPRESSED

This 22 year old young man was completely unfamiliar with the American legal system, having arrived from Pakistan in 1999. He was lured to the 68th Precinct under the guise of having a Detective drop his misdemeanor assault case, only to be confronted with three federal agents, who handcuffed him and put him in a car without explaining what was going on. The facts, as set forth in the affirmation of Martin R. Stolar, show that there was not a voluntary waiver of the right to counsel and, in fact, tried to do so by repeatedly asking to call his parents. He was told he could only after speaking with the agents and the Assistant U.S. attorney in a very coercive atmosphere.

*North Carolina v. Butler*, 441 U.S. 369, 373 (1979) teaches that a subjective understanding by a defendant by a defendant of his rights is relevant to a determination of the voluntariness of a waiver of *Miranda* rights:

> "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case."

The requests by the defendant to call his parents were the functional equivalent of a request for counsel. Being told that he must answer questions before contacting his parents effectively denied him the assistance he needed to make a knowing and intelligent waiver of his *Miranda* rights. See *United States v. Millen*, 338 F. Supp. 747, 752 (E.D. Wis. 1972) ("...*Miranda* leaves no doubt that the interrogation must cease the moment the defendant asks for help.")

Finally, the government knew that the defendant was represented by counsel not only in the pending misdemeanor case but also in an immigration case. Before going to the precinct, the defendant had reached out to his attorney who, upon being advised that the defendant expected his case to be dismissed at the precinct, advised him to go there. Once he was taken away from the precinct, the repeated requests to call his parents were an effort to tell his lawyer that he was no longer at the 68th Precinct.

In summary, the post-arrest statement was neither voluntary or the product of a knowing waiver of rights. The statement should be suppressed or, at a minimum, a pre-trial hearing should be held to further develop the facts.

Submitted by,

_____
Martin R. Stolar