UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA

                                          **OPINION AND ORDER**
       -v-                                           **05-CR-104 (NG)**


**SHAHAWAR MATIN SIRAJ,**

            **Defendant.**
------------------------------------------------------------x
**GERSHON, United States District Judge:**

      Defendant Shahawar Matin Siraj is charged with conspiring to maliciously damage and destroy, by means of an explosive, the 34th Street subway station at Herald Square in New York City, in violation of 18 U.S.C. §§ 844(I) and (n); conspiring to wreck, derail and disable a subway car located in the 34th Street subway station, in violation of 18 U.S.C. §§ 1993(a)(1) and (a)(8); conspiring to place a destructive device in, upon and near the 34th Street subway station, without previously obtaining the permission of the New York City Metropolitan Transit Authority, and knowing and having reason to know that such activity would likely derail, disable and wreck a mass transportation vehicle, in violation of 18 U.S.C. §§ 1993(a)(3) and (a)(8); and conspiring to unlawfully deliver, place, discharge and detonate an explosive and other lethal device in, into and against the New York City Metropolitan Transit Authority subway system, with the intent to cause extensive destruction of such system, where such destruction was likely to result in major economic loss, in violation of 18 U.S.C. § 2332f.

      Defendant now moves to dismiss Count Four of the Indictment against him, arguing that 18 U.S.C. § 2332f is unconstitutional. He also argues that the four counts of the indictment are multiplicitous and seeks an order requiring the Government to elect one count. He also moves for

the discovery of all statements made by defendant to the Government's confidential informant. Finally, defendant seeks any materials to which he is entitled by *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

*Discussion*

**I.      Constitutionality of 18 U.S.C. § 2332f**

Defendant is charged, under Section 2332f(a)(2), with conspiring to deliver and detonate an explosive or other lethal device in a public facility. Section 2332f(b)(1)(E) provides the jurisdictional basis for this charge, and defendant argues that, as applied to him, it violates equal protection principles embodied in the Fifth and Fourteenth Amendments to the U.S. Constitution. Section 2332f(b)(1) states:

> (b) Jurisdiction.--There is jurisdiction over the offenses in subsection (a) if--
> > (1) the offense takes place in the United States and--
> > > (A) the offense is committed against another state or a government facility of such state, including its embassy or other diplomatic or consular premises of that state;
> > > (B) the offense is committed in an attempt to compel another state or the United States to do or abstain from doing any act;
> > > (C) at the time the offense is committed, it is committed--
> > > > (i) on board a vessel flying the flag of another state;
> > > > (ii) on board an aircraft which is registered under the laws of another state; or
> > > > (iii) on board an aircraft which is operated by the government of another state;
> > > (D) a perpetrator is found outside the United States;
> > > **(E) a perpetrator is a national of another state or a stateless person;** or
> > > (F) a victim is a national of another state or a stateless

person;

18 U.S.C. § 2332f (emphasis added). Defendant argues that, "by having the statute apply only to non-American citizens, it discriminates on the basis of alienage and fails to provide equal protection of the law and violates the due process clause of the 5th Amendment."

The Supreme Court generally has treated alienage as a suspect classification requiring heightened scrutiny "only when a *state or local government* has sought to employ the classification to disadvantage foreign nationals." *See United States v. Lue*, 134 F.3d 79, 86 (2d Cir. 1998) (addressing cases) (emphasis added). "The Court has recognized that the federal government has national interests when dealing with aliens that are different from those of the individual states," and therefore "state or local laws that disadvantage aliens are presumptively invalid while federal laws doing the same are accorded substantial deference." *See id.* Under *Lue*'s reasoning, Section 2332f comports with the Constitution's equal protection requirements so long as it is "rationally related to a legitimate government interest." *See id.* at 87. Section 2332f is a component of the Terrorist Bombings Act of 2002 which implements the International Convention for the Suppression of Terrorist Bombings. *See* 148 Cong. Rec. S5569-01 (statement of Sen. Leahy, Principal Sponsor) ("This bill will bring the United States into immediate compliance with two important international conventions, which were signed by the United States and transmitted to the United States Senate for ratification by President Clinton. Both Conventions were entered into after the terrorist bombings at the United States embassies in Kenya and Tanzania."). Senator Leahy stated that "[t]he chief purpose of the Terrorist Bombing Convention is to foster international cooperation and decrease hurdles to extradition in terrorism cases." *Id.* The House Report indicates that "[t]he International Convention for the Suppression of Terrorist Bombings requires parties to the treaty to criminalize

the act of terrorist bombing aimed at public or governmental facilities, or public transportation or infrastructure facilities." H.R. Report No. 107-307 at 7 (2001). The same House Report identifies H.R. 3275, which ultimately became Section 2332f, as "[a] bill to implement the International Convention for the Suppression of Terrorist Bombings to strengthen criminal laws relating to attacks on places of public use, to implement the International Convention of the Suppression of the Financing of Terrorism, to combat terrorism and defend the nation against terrorist acts, and for other purposes." *See id.* at 1.

Defendant's equal protection claim parallels the rejected claim of the alien defendant in *Lue*. In *Lue*, the Second Circuit concluded that the alien defendant's equal protection challenge to the federal Hostage Taking Act could not succeed because "[t]he asserted purpose of the statute, along with the antecedent Convention, is to address a matter of grave concern to the international community: hostage taking as a manifestation of international terrorism." *See Lue*, 134 F.3d at 87. In upholding the constitutionality of the statute, the court found that "Congress rationally concluded that a hostage taking within our jurisdiction involving a noncitizen is sufficiently likely to involve matters implicating foreign policy or immigration concerns as to warrant a federal criminal proscription." *See id.* The same analysis is applicable here. The purpose of Section 2332f is to address a matter of concern to the international community at least as significant as hostage taking: terrorist bombings. The issue is not, as defendant phrases it, whether "there is a rational basis for concluding that there is a correlation between an individual's citizenship status and the individual's perpetrating either more terrorist bombings or more heinous terrorists bombings." Rather, the issue is whether Section 2332f's jurisdictional discrimination regarding aliens is rationally related to the legitimate government interest in fighting terrorism. This jurisdictional element was necessary in

order to legislatively effectuate conventions entered into by the United States as part of an effort to combat terrorism. It is clear that the convention and the domestic implementing legislation are directed at terrorism of an international nature. In this context, a jurisdictional provision that depends on the perpetrator being a national of another state is rational. The potential foreign policy and immigration implications of any terrorist bombing involving an alien further support the rationality of Section 2332f's jurisdictional scheme. Defendant's motion to dismiss Count Four of the Indictment is thus denied.

## II. Multiplicity

Defendant's argument that the indictment is multiplicitous can succeed only if he can demonstrate that the "offenses charged separately in the indictment are really one offense" charged multiple times. *See United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). The test for this determination, known as the "*Blockburger*" test or the "same elements" test, dictates that, "[i]f there is an element in each offense that is not contained in the other, they are not the same offense for the purposes of [the Constitution's double jeopardy clause], and they can both be prosecuted." *See id.*; *see also Blockburger v. United States*, 284 U.S. 299 (1932). "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'–in the legal sense, as defined by Congress–complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146. Thus, the court must examine the specific elements of each count of the indictment.

18 U.S.C. § 844(i), the basis for Count One, states, in relevant part:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or

> other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned . . .

18 U.S.C. 1993(a)(1), the basis for Count Two, states, in relevant part:

> Whoever willfully– (1) wrecks, derails, sets fire to, or disables a mass transportation vehicle or ferry . . . . shall be fined under this title or imprisoned . . .

18 U.S.C. 1993(a)(3), the basis for Count Three, states, in relevant part:

> Whoever willfully-- (3) sets fire to, or places any biological agent or toxin for use as a weapon, destructive substance, or destructive device in, upon, or near any garage, terminal, structure, supply, or facility used in the operation of, or in support of the operation of, a mass transportation vehicle or ferry, without previously obtaining the permission of the mass transportation provider, and knowing or having reason to know such activity would likely derail, disable, or wreck a mass transportation vehicle or ferry used, operated, or employed by the mass transportation provider . . . . shall be fined under this title or imprisoned . . .

Finally, 18 U.S.C. § 2332f(a)(1)(B), the basis for Count Four, states, in relevant part:

> Whoever unlawfully delivers, places, discharges, or detonates an explosive or other lethal device in, into, or against a place of public use, a state or government facility, a public transportation system, or an infrastructure facility . . . . with the intent to cause extensive destruction of such a place, facility, or system, where such destruction results in or is likely to result in major economic loss, shall be punished as prescribed in subsection (c).

A review of the elements of each count reveals that the entire Indictment passes the *Blockburger* test, as each count can be distinguished from each of the three others by virtue of a unique element. Count One requires that the property destroyed be property used in interstate or foreign commerce, and none of the other counts require such a demonstration. Count Two requires that the Government prove the defendant conspired to destroy a "mass transportation vehicle or ferry," and none of the other counts require such a demonstration. Count Three has two elements that are not present in any

of the other counts — the requirement that a destructive device be placed in a mass transit facility and the requirement of proof that it was done without the permission of the mass transit provider. Count Four also has two unique elements — the Government must prove intent to cause "extensive destruction" to a public transportation system or other public facility and the Government must prove that the crime was likely to result in major economic loss. Thus, defendant cannot demonstrate that the Indictment is multiplicitous, and his request that the Government be required to elect one of the charges is denied.

**III.    Discovery of Statements**

Defendant moves, pursuant to Rule 16, for the discovery of any reports made by government agents during debriefings of a confidential informant with whom the defendant spoke prior to his arrest. Any written or recorded statements of defendant have been provided to the defense. What defendant seeks, in addition, is discovery of any reports by law enforcement officers describing any statements of defendant that were reported to them by the confidential informant. Rule 16 of the Federal Rules of Criminal Procedure does not require the Government to turn over such reports as discovery, and defendant has cited no precedent interpreting Rule 16's requirements to require such discovery. The motion is denied.

**IV.	*Brady* and *Giglio* Materials**

Defendant's request for these materials was resolved at oral argument on September 13, 2005. Any further requests involving these issues will be resolved at a future conference.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

Dated:	November 2, 2005
	Brooklyn, New York