1

1
2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

3      - - - - - - - - - - - - -      X

4    UNITED STATES OF AMERICA,      :    CR 05-104

5                                    :

6

7         -against-                 :

                                         United States Courthouse
                                         Brooklyn, New York

8    SIRAJ SHAHAWAR MATIN,          :

9                                        November 9, 2005
           Defendant.              :    5:45 o'clock  p.m.
10     - - - - - - - - - - - - -      X

11

12                     TRANSCRIPT OF CONFERENCE
              BEFORE THE HONORABLE NINA GERSHON
13                UNITED STATES DISTRICT JUDGE

14

     APPEARANCES:
15

16   For the Government:            ROSLYNN R. MAUSKOPF
                                    United States Attorney
17                                  BY: TODD HARRISON
                                    Assistant United States Attorney
18                                  One Pierrepont Plaza
                                    Brooklyn, New York
19

20   For the Defendant:             MARTIN R. STOLAR, ESQ.

21

     Court Reporter:                Gene Rudolph
22                                  225 Cadman Plaza East
                                    Brooklyn, New York
23                                  (718) 260-2538

24

     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.

GR      OCR      CM      CRR      CSR

2

1        THE CLERK:  Criminal cause for status conference,

2   United States versus Matin.

3        The appearances, please.

4        MR. HARRISON:  Todd Harrison for the United States.

5        Good afternoon, Your Honor.

6        MR. STOLAR:  Martin R. Stolar.

7        Good evening, Judge.

8        THE COURT:  Hello, counsel.

9        I'm sorry I had to keep you waiting.

10        MR. HARRISON:  That's okay.

11        THE COURT:  I was just finishing up another trial.

12        Okay.

13        MR. STOLAR:  Let me suggest the first order of

14   business.

15        THE COURT:  Yes.

16        MR. STOLAR:  That is, I am pleased to say that I

17   will withdraw the conditions of confinement motion.  My client

18   has been released from the Special Housing Unit and he is now

19   in general population.

20        THE COURT:  I see.

21        The next thing?

22        MR. STOLAR:  Second order of business, I guess we

23   will have a hearing on the motion to suppress based on the

24   government's letter of -- dated yesterday.

25        THE COURT:  All right.  I thought I was going to get

3

1   papers today.  Is that the paper?

2          MR. STOLAR:  That --

3          MR. HARRISON:  The only issue left open, Judge, was

4   we had objected to them submitting an attorney affirmation.

5          THE COURT:  Right.

6          That was taken care of?

7          MR. HARRISON:  That was taken care of.  They

8   submitted the defendant's own affirmation.

9          THE COURT:  Right.

10         MR. HARRISON:  Therefore, we are not objecting to

11   their --

12         THE COURT:  What about any legal briefing?  I

13   thought I would get something before.

14         Your assumption is that you will not do that until

15   after the hearing?

16         MR. STOLAR:  Posthearing.

17         MR. HARRISON:  Yes.

18         THE COURT:  Do you think so?  I am not going to know

19   what I am looking for at the hearing?

20         MR. HARRISON:  It's pretty simple.  We are talking

21   about the voluntariness of his post-arrest statements.

22         MR. STOLAR:  That's correct.

23         THE COURT:  That's the only issue?  Voluntariness?

24         MR. STOLAR:  Voluntariness in the overall sense.

25   That includes Miranda and whether the waiver of Miranda was a

4

1   voluntary and knowing waiver.

2           THE COURT:  Okay.  How long do you anticipate the

3   hearing will take?

4           MR. HARRISON:  Not long, Judge.  I am in the process

5   of evaluating it now.  I think the government will just have

6   two, three, at the most, witnesses.  I don't anticipate them

7   taking more than a couple of hours.

8           MR. STOLAR:  The defendant may testify at the

9   hearing.  Then we may have one other witness.  I would -- I

10  think it will probably be at least one day.

11          THE COURT:  Do you think it will be a full day?

12          MR. STOLAR:  I think so.

13          THE COURT:  All right.  Let me take a look at the

14  calendar.  We have it scheduled for the 18th?

15          MR. STOLAR:  We do, Judge.

16          THE COURT:  All right.

17          MR. STOLAR:  My cocounsel Khurrum Wahid has asked me

18  to ask you to see if we can put the hearing off so he can be

19  present.  He's presently on trial in the Eastern District of

20  Virginia.  He expects the case to wind up approximately

21  Thanksgiving weekend.  It is a fairly high profile, serious

22  case that he has been on trial with for about two weeks.

23          THE COURT:  I am not available.  I have a problem

24  with availability on -- I won't be available the week after

25  Thanksgiving.

5

1          MR. STOLAR:   Mr. Harrison runs into a problem.   My
2     suggestion is that we go over to January with the hearing.
3          THE COURT:   Aren't we supposed to be on trial in
4     January?
5          MR. HARRISON:   Yes, Judge.
6          MR. STOLAR:   Yes.   It is down in my book with a
7     question mark.
8          MR. HARRISON:   Judge, we are definitely set for
9     January 9th.   The only question, I know we are moving court
10    then.   You said there might be half day or day delay.
11         THE COURT:   I can't predict.   I can't predict that
12    if we move the trial we are going to end up moving it to the
13    day that we actually are moving.   I can't --
14         MR. HARRISON:   That's my impression.   We are
15    definitely set for January 9th.
16         THE COURT:   You want to put the hearing on for
17    January 9th?
18         MR. HARRISON:   I don't.   I would like to go next
19    week when we are scheduled to go.   I like Mr. Wahid but I
20    don't know why we necessarily need him for the suppression
21    hearing.
22         MR. STOLAR:   Because he has done a good portion of
23    the work.   He's also done some of the non-defendant witnesses.
24         THE COURT:   What you are saying is, we can't do it
25    on November 18th.   We have to move it to January?

1        MR. STOLAR:  We can do it in December, depending

2    on --

3        MR. HARRISON:  I am starting trial November 28th in

4    front of Judge Trager.  It is going to go pretty much up until

5    Christmas.

6        THE COURT:  I am scheduled to have a trial also

7    then, that entire month.  I could take off -- maybe take one

8    day off.

9        If you are not available either, we will forget

10   about December.  Okay.

11       MR. STOLAR:  So early --

12       THE COURT:  The options are either just going

13   forward with it on the 18th and then having the trial

14   January 9th, or if we do the hearing, then you are going to

15   want to brief it, we would have to put the trial off.

16       MR. STOLAR:  How about the week of January 2nd?

17       MR. HARRISON:  The cautionary note that I would

18   mention, Judge, is that if things got pushed back, then I have

19   a concern because I am going to be out of the office probably

20   for the first week of February and then for March and most of

21   April.  I am just concerned if we keep pushing things back

22   towards January, things are going to get pushed back.

23       Mr. Stolar also is going to, I think, submit to Your

24   Honor -- he would like to have a rather lengthy questionnaire.

25   The government's position is it is not necessary to have a

7

1    lengthy questionnaire in this case.  I wouldn't mind

2    submitting some extra voir dire questions to Your Honor,

3    something along the lines of what I believe Your Honor did in

4    Maflahi.  So that's not something where we are giving a jury,

5    the voir dire panel, a lengthy questionnaire that will take

6    them weeks to fill out and us another two weeks to score and

7    then come back and have another week of questions.  I think we

8    can accomplish this in a couple of days, just with some extra

9    voir dire questions that are asked by the Court.

10             MR. STOLAR:  I thought --

11             THE COURT:  I'm sorry.

12             MR. STOLAR:  I thought we were on the scheduling

13   question.

14             MR. HARRISON:  That's my point.

15             THE COURT:  The point is that if the questionnaire

16   takes a long time, then we do have an issue.

17             MR. STOLAR:  Judge, you have not even determined

18   whether or not you are willing to consider using a

19   questionnaire.  That's why I wrote you the letter.

20             THE COURT:  I thought that -- your letter said the

21   government had no opposition to the request.

22             MR. STOLAR:  That --

23             MR. HARRISON:  He raised it as a general

24   hypothetical at the last status conference.  I said I don't

25   have an immediate opposition to it.  I wanted to think about

1   it.

2            I also would have some questions that I would like

3   to submit for voir dire but I don't think a full blown lengthy

4   questionnaire is necessary.

5            THE COURT:  Maybe the thing to do with respect to

6   the questionnaire is have you, as soon as possible, submit to

7   me the questions that you think should go in a questionnaire.

8   Try to work out between yourselves as much as you can an

9   agreement as to the questions.  After I look at it I can

10  decide whether I think this is something that could be done in

11  a --

12           MR. STOLAR:  I have a draft of a full blown

13  questionnaire which I haven't gone over with Mr. Harrison yet.

14  It is much too long.  I will --

15           THE COURT:  Let's fix some time for this to be done.

16  Give me -- then we will go back to the other scheduling.  Can

17  you give me a date by which you can get your proposed

18  questionnaire to Mr. Harrison and he can respond?  Then when I

19  take a look at it when it is all done I can decide whether I

20  think we need a questionnaire.

21           MR. STOLAR:  Taking his suggestion, obviously there

22  are -- the major thrust of the letter that I wrote you has to

23  do with people being more honest in the privacy of filling out

24  a questionnaire on some of the more combustible issues in the

25  case.

1    THE COURT:  Right.  That's not the word you want to

2  use, right?

3    MR. HARRISON:  No, Judge, I wouldn't think so.

4    THE COURT:  You may recall better than I do in terms

5  of the Maflahi case what -- did I take all the jurors in the

6  back?

7    MR. HARRISON:  I think you did, Judge.  That's my

8  understanding from Ms. Moore.

9    THE COURT:  I had another case.  I actually had a

10  case but it wasn't a charge of terrorism.  It was just that

11  the defendants were Arabic defendants and they were -- it was

12  a white collar case.  There was no charge of terrorism but it

13  was immediately after 9/11.

14    MR. HARRISON:  I believe the defendants were going

15  to learn about the fact that the original investigation was a

16  terrorism investigation.

17    THE COURT:  No.  The case that I am -- I am not

18  talking about Maflahi.  I am talking about a different case

19  that I did where what I did was simply -- I actually

20  interviewed every single juror in the back.  It was actually

21  fairly efficient and effective.

22    MR. HARRISON:  That was going to be part of my

23  suggestion.  That would take care of the defense's privacy

24  concerns.

25    THE COURT:  It may be in this case we may be able to

1   cut back on the number of people who I have to interview.

2         MR. STOLAR:  Based on the written response?

3         THE COURT:  Based on the questionnaire.  I am

4   certainly prepared to consider it.  I don't see any reason to

5   have a very lengthy questionnaire.

6         MR. STOLAR:  No.  I am willing to cut it down to the

7   issues that I highlight in my letter to you.

8         THE COURT:  Okay.  I would suggest -- let's have a

9   date by which you will file the proposed questions.  Either

10  this will be in a questionnaire or this will be your proposed

11  voir dire, presumably.

12        MR. STOLAR:  Again, it is the privacy.  It's like

13  asking somebody in front of all the jurors.

14        THE COURT:  I will not do that.  I can assure you, I

15  am not going to do that.

16        MR. STOLAR:  You start on the 28th?  Mr. Harrison?

17        MR. HARRISON:  Yes.

18        You can get it -- the forms, I will look at it

19  whenever.

20        THE COURT:  Let's do that right now.  Then I can

21  start thinking about that.

22        MR. STOLAR:  All right.  Let me take two weeks to

23  try to put it together for you.

24        THE COURT:  Okay.  That would be what?

25        MR. STOLAR:  That would be the -- around the 23rd.

1    I will try to get it out --

2            THE COURT:  Before Thanksgiving?

3            MR. STOLAR:  Thanksgiving present.

4            THE COURT:  All right.  11/23 for the defendant's

5    proposed questionnaire.

6            Mr. Harrison?

7            MR. HARRISON:  If you give me, I guess, until the

8    end of the next week, which is December 2nd.

9            THE COURT:  Okay.  Then really what I am interested

10   in is something after you exchange these and what remains in

11   dispute.

12           MR. HARRISON:  Sure.

13           THE COURT:  If you can put something like that

14   together.

15           MR. STOLAR:  Okay.

16           THE COURT:  Okay.  Say a week after that,

17   December 9th, what's agreed and what isn't agreed, a

18   statement.

19           MR. HARRISON:  That's something in writing to you,

20   Judge.

21           THE COURT:  Yes, I think something in writing.

22           MR. STOLAR:  You want me to submit to the government

23   and then they will get back to me in a week?

24           THE COURT:  Exactly.  Try to work it out together

25   and get me something.  That's fine.

1          Then the question is, since I have actually never

2     used a questionnaire, how to prepare it for a case.  We never

3     had to do it.

4          I don't really know how long it does take in terms

5     of jury selection.

6          MR. STOLAR:  It doesn't really delay it that much,

7     even with the full blown questionnaires.

8          THE COURT:  We have to bring the jurors here.  They

9     look at the questionnaire and fill it out somewhere, probably

10    in the courtroom on the second floor.

11         How many jurors do you think we will need to call?

12         MR. STOLAR:  How long do you think the trial is

13    going to take?  The government's case?

14         MR. HARRISON:  I would say, the government's case

15    won't take more than two weeks, at the most, I would think.

16         THE COURT:  We are not sitting on Fridays.

17         MR. STOLAR:  That would be the preference.

18         THE COURT:  Okay.

19         MR. HARRISON:  I have to say, I've never actually

20    done a questionnaire either.  In talking to a number of people

21    from my office who have, they describe sort of a nightmare

22    scenario.  After the jurors fill it out, it usually takes,

23    because of the number of questions, the number of jurors to

24    fill out the forms, it takes a couple of weeks for the various

25    attorneys to score the sheets and figure out.

1          THE COURT:  There are only two of you.

2          MR. HARRISON:  Right.  Two sides, each of the two

3  sides to go over things.  It takes a significant amount of

4  time and manpower.

5          MR. STOLAR:  Here we are cutting it down to

6  basically questions about the issues that I have outlined.  I

7  think we are going to run into -- I think we should have a

8  larger pool rather than a smaller one.

9          THE COURT:  Obviously.

10          Are we talking about how many hundreds of people are

11  we going to need?  I think the government probably would have

12  a better idea based on other cases that have been done in the

13  office.

14          MR. HARRISON:  Again, I've never actually done a

15  case with a questionnaire.  I can find out.

16          THE COURT:  I don't know that that makes a

17  difference.

18          MR. HARRISON:  My guess is, and I will ask, my guess

19  is in cases with questionnaires, more people get struck.

20  There is just more information for the attorneys to argue that

21  someone should be struck.  That's sort of another reason why

22  everything sort of takes longer with a questionnaire.  I could

23  try and find out and maybe submit something to the Court.

24          THE COURT:  Right.

25          We obviously don't have to get the jurors now.  We

1  need plenty of notice.  We can't ask them the week before.  If

2  we need more jurors than would fit into the ceremonial

3  courtroom, we may have to do it on multiple days.  Again,

4  there is -- my sense of it was, there was a lot of logistics

5  to it which we maybe we could avoid with something else.

6           MR. HARRISON:  That's my understanding.

7           MR. STOLAR:  How many people does the ceremonial

8  courtroom sit?

9           THE COURT:  Two hundred.

10          THE CLERK:  A little more, 250.

11          THE COURT:  Between two and 300.

12          Counsel, just a thought  which is that if the idea

13  is to really quickly get rid of jurors who can't be fair,

14  maybe a relatively brief questionnaire dealing with those type

15  of issues that are a problem here and we could eliminate lots

16  of jurors and then do a private voir dire with everyone else.

17          MR. STOLAR:  That makes sense.

18          THE COURT:  That might be the way to do it, rather

19  than creating this unwieldy -- I haven't had much sympathy for

20  the questionnaire practice based upon my understanding of how

21  unwieldy it was.  I can understand the concerns here.  There

22  may be some kind of combination that would work well.  I

23  certainly am not looking to interview 300 people if I don't

24  have to.

25          MR. STOLAR:  No.  I think that the -- if the

1  questions are properly phrased, that people who feel sensitive

2  about it are going to be quickly eliminated.  They will

3  self-eliminate, essentially.  Then we will be back to

4  essentially the normal voir dire and perhaps a follow-up on

5  some of the iffy responses that people will give.

6          THE COURT:  Okay.

7          MR. STOLAR:  Good.

8          THE COURT:  All right.

9          MR. STOLAR:  That brings us back to scheduling.

10         THE COURT:  Okay.

11         MR. STOLAR:  The hearing on the motion to suppress,

12  I do think that Mr. Wahid, his presence I think is necessary,

13  which is why I would like to sort of -- I would even do it, if

14  you are working between Christmas and New Years, we can come

15  in then.

16         MR. HARRISON:  My guess is I am going to have

17  problems with witnesses.

18         MR. STOLAR:  The agents don't want to come in?

19         MR. HARRISON:  During that period, yes, Judge.

20         THE COURT:  If we -- let's see.  If we did the

21  suppression hearing on the 9th, but then you are going to need

22  time to brief it.  Then we would definitely have to put the

23  trial over for a significant period of time.

24         You will be back when?

25         MR. HARRISON:  I would be back mid-April, Judge.

1          MR. STOLAR:  That's fine.  I don't have a problem

2     with that.

3          THE COURT:  It will certainly give us plenty of time

4     to work on the questionnaire.

5          MR. STOLAR:  Among other things.

6          THE COURT:  Mr. Harrison?

7          MR. STOLAR:  One of the other considerations also, I

8     have to say in terms of time, is that I have -- my client was

9     able to bring in the -- his corrections of the transcripts of

10    seven of the 14 disks, which I am getting --

11         THE COURT:  Whose corrections?  Your client's?

12         MR. STOLAR:  My client's corrections.

13         I am going to make copies of those and get them to

14    Mr. Harrison so that he can see -- we are trying to get to

15    some kind of an agreed rendition transcript of what's on the

16    tapes.

17         THE COURT:  He's corrected seven so far?

18         MR. STOLAR:  Seven so far, since he has been moved

19    down from the SHU.  Of course, the disks didn't get moved down

20    with him.  So we are now scrambling to try to get the disks

21    down from SHU going through the counselor and MDC Legal.

22         THE COURT:  Okay.

23         MR. STOLAR:  He has one conversation left on the

24    eighth transcript.

25         THE COURT:  All right.  Mr. Harrison, can you

1   accommodate that?  We will do the suppression motion on the

2   9th and then we will put the trial over?  That will be

3   briefed.

4           MR. HARRISON:  Okay, judge.

5           THE COURT:  Is that all right with you?

6           MR. HARRISON:  Yes.

7           THE COURT:  Your schedule?

8           Okay.  Then we don't need the November 18th at all.

9           MR. STOLAR:  Right.

10          THE COURT:  Okay.  Let's pick a date and let's make

11  this firm now.

12          MR. STOLAR:  Okay.

13          THE COURT:  Mr. Harrison?

14          MR. STOLAR:  Not so strangely, my entire month of

15  April is clear.

16          THE COURT:  Me too.

17          MR. HARRISON:  I will be back mid-April, Judge.  If

18  we can -- the first week of May?

19          MR. STOLAR:  May 1st?

20          THE COURT:  Just a second.

21          MR. STOLAR:  May Day, Law Day.

22          THE COURT:  You said the government two weeks and

23  the defense maybe a week, right?

24          MR. STOLAR:  I don't think it will be that long.

25  There will be a defense case.

1          THE COURT:  Could we start -- I just have

2    something -- I don't want to backup into something that's a

3    problem.  So how about starting on April 24th?

4          MR. STOLAR:  That works.

5          MR. HARRISON:  My problem is, I am coming back right

6    then.  I am going to need a little bit of time to get

7    everything together.  I was going to ask for, I guess, for

8    May 1st, if that's possible.  It is a Monday.

9          MR. STOLAR:  It's Labor Day in Mexico, Judge.

10          THE COURT:  The problem is that -- you are saying

11    it's three weeks but then we have the issue of the

12    questionnaire.  We don't how long that's going to take.

13          MR. STOLAR:  It's not going to take that long.

14          THE COURT:  It could take a week.

15          MR. STOLAR:  I don't think so.  Given what I am

16    thinking about cutting down the questionnaire to, it will

17    probably be like --

18          THE COURT:  It has to take at least three, four days

19    to do jury selection in this case.  There is no way that it

20    won't.

21          MR. STOLAR:  Right.

22          THE COURT:  I am just concerned about putting this

23    over.

24          MR. STOLAR:  Do you have something in June?

25          THE COURT:  I do.

1          MR. HARRISON:  We could, Judge, if April 24th is a

2   jury return day, I guess we could have jurors come in and fill

3   out a questionnaire and then at least the lawyers could get

4   that going that week.

5          THE COURT:  Exactly.  If you could do that, then I

6   could feel somewhat confident that we'd actually start the

7   trial on the May 1st.

8          MR. STOLAR:  Right.  That would be the idea.  We get

9   jury selection taken care of.

10          THE COURT:  Okay.  Good.

11          All right, counsel.  When should I put this on for

12   the next conference?

13          Are there any other issues, discovery issues?

14          MR. STOLAR:  The only other issue that I have on my

15   laundry list here is that -- is the question of early

16   disclosure of Brady and Giglio material.  Mr. Harrison in his

17   letter dated yesterday did release a piece of Brady

18   information.  But the -- one of the major things that I was

19   looking for, which Mr. Harrison does not respond to, had to do

20   with any reports that are made by the confidential informant

21   to his handler of conversations that he had with Matin where

22   Matin is resistant to the idea of engaging in any kind of

23   violent activity.

24          THE COURT:  Mr. Harrison, you said that you would

25   respond to that, you would consider that.

1       MR. HARRISON:  We argued this at -- I thought Your

2  Honor dealt with this.

3

4       THE COURT:  I did.  My recollection is that what you

5  indicated at that point was that you hadn't at that point

6  fully understood what Mr. Stolar's concern was and that you

7  would review the material and provide --

8       MR. HARRISON:  That was related to the Brady letter

9  that I just turned over.

10       Mr. Stolar's point was, he made clear at the last

11  time we were here that they were going to impose an entrapment

12  defense.  Based on that, I wanted to go back and look at our

13  materials and see if there was anything that was more likely

14  to be Brady based on that.  That's what I did.  That's the

15  letter I wrote.

16       As I put in my letter, I don't think that's actually

17  technically Brady but I wanted to be on the safe side and turn

18  it over.  That's what that was as to.  We argued orally about

19  the other reports.  I think it was pretty clear at least from

20  the my point of view --

21       THE COURT:  I ruled.

22       MR. STOLAR:  You ruled they weren't Rule 16.

23       THE COURT:  Correct.

24       MR. STOLAR:  But this is a different -- the same

25  report but a different issue.

1        THE COURT:  If they are Brady, they have an

2  obligation to turn it over.  I am not sure what --

3        MR. HARRISON:  What --

4        MR. STOLAR:  In the -- any of the reports that the

5  CI, Dadouhdi.  D A D O U H D I -- that's not the right

6  spelling, Judge.

7        THE DEFENDANT:  D A W O D I.

8        MR. STOLAR:  D A W O D I,  Dawodi.

9        THE COURT:  Okay.

10        MR. STOLAR:  In the -- in months prior to his

11  beginning to tape conversations with Mr. Matin, I am sure he

12  made reports to his handler about interactions that he had

13  with Matin and others.  If in those reports there are

14  indications that Matin was resistant to the idea or expressed

15  ideas that say I don't want to be involved in any kind of

16  violent jihad or any kind of conduct of that nature, those

17  would be Brady, given the nature of an entrapment defense.

18  That shows predisposition, as opposed to something that comes

19  later on, which is a willing participation in the conspiracy.

20        THE COURT:  Okay.

21        MR. HARRISON:  Okay.  Right.  So we have gone past

22  the issue of -- before Mr. Stolar wanted all the reports

23  regardless of --

24        MR. STOLAR:  Rule 16.

25        MR. HARRISON:  I understand.  I will check again.  I

1    think I have gone through the stuff with an eye towards that.

2           There was a mention in the original complaint filed

3    in open court that the defendant had made a statement like

4    that related directly to the bombing conspiracy, that he

5    didn't want to kill anybody.  We put that in the complaint.

6    It's not like that hasn't been disclosed.

7           MR. STOLAR:  That's in the tapes.

8           MR. HARRISON:  As far as I remember, there is

9    nothing else in there.  I will go back and check once again.

10          THE COURT:  Anything else?

11          MR. STOLAR:  That completes my laundry list.

12          THE COURT:  All right.  Let's -- when shall we meet

13   again then?

14          MR. HARRISON:  Do you want to meet on December 16th,

15   Judge, just as a status, a week after we submit any disputes

16   that we have about the questionnaires in writing to you?

17          MR. STOLAR:  If we can do it in the afternoon,

18   that's fine with me.

19          THE COURT:  That's fine.  Okay.  How about 4:00

20   o'clock?

21          MR. STOLAR:  4:00 o'clock on Friday is always

22   wonderful.

23          THE COURT:  Okay.

24          MR. HARRISON:  Judge, I assume the defense is

25   agreeing to exclude the time, speedy trial time, up until our

1   trial date.

2        MR. STOLAR:  Of course.

3        THE COURT:  Since they requested it, I think that's

4   appropriate.

5        MR. HARRISON:  Thank you, Judge.

6        THE COURT:  Time will be excluded until our trial

7   date, April 24th.

8        Okay.  Thank you very much.

9        MR. HARRISON:  Thank you.

10        MR. STOLAR:  Thank you.

11        (Matter concludes.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25