**MARTIN R. STOLAR**
Attorney at Law
351 Broadway
New York, NY 10013
212-219-1919 (fax) 212-941-0980
mrslaw37@hotmail.com


December 21, 2006


Hon. Nina Gershon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: U.S. v. Shahawar Matin Siraj
    Cr-05-104 (NG)

Dear Judge Gershon:

    The defense respectfully submits this letter and accompanying exhibits to aid the Court's determination of an appropriate sentence for Mr. Shahawar Matin Siraj (hereinafter "Matin").

    In light of the facts shown at trial -- the key role of Osama Eldawoody in influencing and managing the actions of the coconspirators, the impossibility of a bombing from ever occurring, and Matin's hesitation ultimately to participate in the conspiracy -- as well as the other factors delineated in 18 U.S.C. § 3553(a), the Court should craft an individualized sentence for Matin that includes a term of imprisonment that falls significantly below that recommended by the government.

    To support the defense's recommendation, the following exhibits are attached for the Court's review:

    A.  A Forensic Psychological evaluation of the defendant by Dr. Alan M. Goldstein (and his *curriculum vitae*);

    B.  Family letters;

1

  C. Police Clearance Certificate from Pakistan;

  D. School documents;

  E. Letters from people in Pakistan; and

  F. Letters from people in the United States.

These exhibits provide a greater insight into Matin's intellectual and emotional shortcomings: below average intelligence, emotional immaturity, and susceptibility to manipulation.

Notwithstanding the advisory U.S. Sentencing Commission Guidelines, undersigned counsel urge the Court to consider that the totality of the factors found in 18 U.S.C. § 3553(a) justify a sentence less harsh that one based upon a guidelines calculation.

  **1. The Nature and Circumstances of the Offense**

Having presided over the motion practice and trial, the Court is aware of how the offense came to occur and the instrumental role that the government's confidential informer played in pushing the conspiracy forward. While acknowledging the jury's verdict, it is apparent that confidential informant Eldawoody spent countless hours alone with Matin creating a deep emotional bond between the two. Eldawoody frequently drove Matin home to Queens from Bay Ridge, Brooklyn, using the time alone to teach Matin about the Koran and the Hadiths, or teachings of the Prophet Muhammed. Because Matin came from the shi'a Ishmaeli sect of Islam - a sect considered apostate or un-Islamic by many "mainstream" Sunni Muslims, Eldawoody spent a significant amount of time teaching Mr. Matin about Islam as understood by Eldawoody, an Egyptian Sunni whose father was an Islamic scholar. In his efforts to encourage Matin to join and stay involved in the conspiracy, Eldawoody taught Matin that Islam and jihad embraced violent concepts such as "kill the killers" and that American soldiers in the Middle East are "killers." (See, e.g., T-2042-2043).

In light of Eldawoody's actions and Matin's psychological susceptibility, it has to be apparent that without the intervention of the confidential informant Eldawoody, the offense would not have occurred. Matin is simply not suffused with the intellectual and leadership skills needed to have undertaken such a complicated violent conspiracy without outside intervention and direction. However, once Matin came to see that he was part of a larger "Brotherhood" as described by Eldawoody, Matin readily went along, with his fragile ego seeking approval from those he believed to be important men, including Eldawoody.

The fact that the conspiracy would never have succeeded is also significant. The explosive device was supposed to be supplied by the CI, a key ingredient which the NYPD would never have provided. While this does not detract from the seriousness of the offense, it is informative in helping to determine where in the range of 5 years to life imprisonment the sentence should fall.

### 2.     The History and Characteristics of the Defendant

Matin has no history of being criminally prosecuted outside of this case. (See Exhibit C and the PSI). The only exception was his Brooklyn state court Desk Appearance Ticket arrest for misdemeanor assault, an offense Matin vigorously denies and which has been dismissed and sealed.

Dr. Goldstein's forensic evaluation of Matin (Exhibit A) shows that the defendant is "intellectually limited." Dr. Goldstein notes that Matin's "thinking is overly simplistic and highly concrete. His critical thinking skills and his ability to analyze situations in depth are impaired. As such, his common sense and judgment is diminished."

Further, Dr. Goldstein states that "Mr. Matin is a relatively naive, suggestible person. He is lacking leadership skills and based on his intellectual limitations, he is susceptible to the manipulations and demands of others."

Dr. Goldstein concludes as follows:

> In summary, to a reasonable degree of psychological certainty, it is my opinion that Mr. Matin's intellectual limitations and his personality characteristics were major predisposing factors, increasing the likelihood of his involvement in this illegal activity.

This same immaturity is consistently noted in the letters from people who knew Matin in Pakistan (Exhibit E) as well as those who know him in the United States. (Exhibit F). It is also supported by the school records annexed to this letter. (Exhibit D).

What all of this comes down to is not a portrait of a crazed and dangerous terrorist but an individual easily led and without critical faculties with which to form an independent judgment. The forensic evaluation and letters from those who know Matin provide a much broader context in which to make an individualized assessment of an appropriate sentence. Matin's intellectual and

emotional abilities should lead the Court to view Matin similarly to a juvenile rather than a hardened adult. Thus, factors which a court might take into consideration in sentencing a juvenile offender seem more appropriate in this case.

### 3. The Seriousness of the Offense

There is no question that plotting to blow up the 34th Street subway station is a serious offense, and any sentence imposed should reflect this factor. However, a sentence within the range established by the Guidelines vastly overstates the seriousness of this particular offense in this particular context and would be unreasonable. A sentence well below the Guidelines range would surely be adequate.

### 4. Promoting Respect for the Law

The circumstances of this case do not call for an overly lengthy sentence in considering this factor. In fact, given the legitimate basis of the (rejected) entrapment defense, it may well be that an overly lengthy sentence would not promote respect because it would flag the government's conduct in helping to create the crime only to claim a victory in the "war on terror," and not to ferret out those who may be genuinely engaged in such conduct.

### 5. Providing Just Punishment for the Offense

"Just punishment" in this case should be sufficient with a sentence of no more than 10 years incarceration. There was no loss of life, no damage to property, and no criminal organization of which the defendant was a member. Further, the defendant himself is not a dangerous psychopath, but more of a confused and misguided youngster. Justice and mercy go hand in hand.

### 6. Adequate Deterrence to Criminal Conduct

It is not entirely clear that any similar criminal conduct of a "determined" individual will be deterred by an overly lengthy sentence. Given the nature of what our government has described as a "terrorist," the severe consequences of long term imprisonment are not likely to deter a dedicated terrorist from abandoning his or her illegal and possibly lethal conduct.

A sentence of ten years, however, will certainly provide strong deterrence for young persons similarly situated to Matin. Such a sentence will send a strong message that young people need to take responsibility for their actions and be wary of those who espouse hate.

### 7. Protecting the Public from Further Crimes of the Defendant

This factor would not seem to be involved in fashioning an appropriate sentence in this case. Dr. Goldstein opines that the defendant's "life history and his overall presentation do not indicate a psychopathic lifestyle or psychopathic traits or characteristics." Matin's expressed remorse over his conduct makes it unlikely that he will commit any crime in the future.

In addition, when Matin finishes serving whatever sentence this Court imposes, he will be deported to Pakistan. Thus, the public will be more than adequately protected by a sentence in the ten year range.

### 8. Providing Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment

Given Matin's limited education and limited vocational skills, this factor should weigh heavily as a sentencing consideration. To the extent such programs are available within the Bureau of Prisons, Matin is likely to take advantage of them and the Court should recommend that the BOP, to the extent possible, provide such training.

**Conclusion**

Although public fears about terrorism run deep, undersigned counsel respectfully request that the Court tailor a sentence that fits the unique circumstances of this case. Given what the Court knows about the "plot," how the defendant became involved in it, and who the defendant himself is, a sentence at the lower end of the 5 - life statutory range would be entirely proper under 18 U.S.C. § 3553(a). Any sentence of greater length would not serve to meet the goals of U.S.C. § 3553(a) and would run the risk of being overly harsh and vindictive.

Very truly yours,

_____/S/_____
Martin R. Stolar
Khurrum B. Wahid
Sean M. Maher

MRS/s
cc: All counsel via ECF

Shahawar Matin Siraj

6