**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**UNITED STATES OF AMERICA**

**OPINION AND ORDER**
-v-
**05-CR-104 (NG)**

**SHAHAWAR MATIN SIRAJ,**

        **Defendant.**
-----------------------------------------------------------x
**GERSHON, United States District Judge:**

On May 24, 2006, defendant Shahawar Matin Siraj was convicted by jury of four counts of conspiracy, arising from a plot to bomb the New York City subway station at 34th Street in Manhattan. Specifically, defendant was convicted of conspiring to: (1) damage or destroy by means of an explosive, any building or other real property used in interstate commerce, in violation of 18 U.S.C. §§ 844(i) and (n); (2) wreck, derail, set fire to, or disable a public transportation vehicle, in violation of 18 U.S.C. §§ 1993(a)(1) and (a)(8); (3) place a destructive device in a facility used in the operation of a public transportation vehicle without previously obtaining the permission of the public transportation provider, in violation of 18 U.S.C. §§ 1993(a)(3) and (a)(8); and (4) unlawfully deliver, place, discharge, or detonate an explosive device in a public transportation system with the intent to cause extensive destruction of such system, likely to result in major economic loss, in violation of 18 U.S.C. §§ 2332f(a)(2) and (a)(1)(B). Defendant now moves for a judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and for a new trial in the interests of justice and on the ground of "newly discovered" evidence, pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

**I.**    **Rule 29 Motion**

Defendant, whose sole theory of defense at trial was that he was entrapped by a confidential informant, Osama Eldawoody, argues that the court should enter a judgment of acquittal because

the defense of entrapment was established as a matter of law. (Defendant does not argue that the evidence was insufficient with respect to the crimes charged.) Specifically, he argues that: (1) there was evidence of inducement, i.e., defendant's testimony that it was the confidential informant who talked him into taking steps to engage in violent conduct; (2) there was no evidence of defendant's predisposition in the government's direct case; and (3) the government's rebuttal evidence, i.e., testimony by the undercover officer, was insufficient to meet the government's burden of proving predisposition beyond a reasonable doubt.

Rule 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(c). In cases where "the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." *Id*. The defendant bears a heavy burden on a motion pursuant to Rule 29, and his conviction must be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Florez*, 447 F.3d 145, 154 (2d Cir. 2006); *United States v. Artuso*, 618 F.2d 192, 195 (2d Cir. 1980). In deciding a Rule 29 motion, this court must view the evidence in its totality and in the light most favorable to the prosecution. *Florez*, 447 F.3d at 154; *Artuso*, 618 F.2d at 195.

A brief discussion of the entrapment defense is helpful to deciding defendant's motion. Entrapment is an affirmative defense that requires a defendant to make an initial showing that the government induced him to commit the crime charged. *United States v. Brand*, 467 F.3d 179, 189 (2d Cir. 2006). If a defendant does so, the burden then falls on the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id*.; *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) ("If a defendant presents credible evidence of government

inducement, then the prosecutor must show predisposition beyond a reasonable doubt.").

The first element of the entrapment defense, namely, inducement, requires a defendant to show that it was the government, not he, that originated "the criminal design." *Brand*, 467 F.3d at 189 (citing *Jacobson v. United States*, 503 U.S. 540, 548 (1992)). A defendant's burden of proof on inducement should not be treated as a hollow requirement in those cases where the government has not conceded the issue. *Brand*, 467 F.3d at 190. A defendant cannot satisfy his burden on inducement simply by pointing to the government's use of an undercover agent or confidential informant. *Id*. To satisfy the "relatively slight" burden, the defendant must demonstrate that "the government initiated the crime." *Id*. Inducement by the government includes "soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged." *Id*. That government agents merely afford opportunities or facilities for the commission of the offense does not constitute entrapment; entrapment occurs only when the criminal conduct was the product of the creative activity of law enforcement officials. *Sherman v. United States*, 356 U.S. 369, 372 (1958). Likewise, the mere fact of deceit will not defeat a prosecution; it is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. *United States v. Russell*, 411 U.S. 423, 436 (1973).

If a defendant meets his burden as to inducement, then the government must prove that defendant was predisposed beyond a reasonable doubt. *Brand*, 467 F.3d at 191. Predisposition may be shown by evidence of: (1) an existing course of criminal conduct similar to the crime for which the defendant is charged; (2) an already formed design on the part of the accused to commit the crime for which he is charged; or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement. *Id*. (citing *United States v. Salerno*,

66 F.3d 544, 547 (2d Cir. 1995)). With respect to a defendant's "ready response" to the inducement, a defendant is predisposed to commit a crime if he is "ready and willing" without persuasion to commit the crime charged and awaiting any propitious opportunity to do so. *Id*. at 194. In other words, as the Court stated in *Sherman*, "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." 356 U.S. at 372.

The government's evidence at defendant's lengthy trial included the testimony of a cooperating witness, James Elshafay; a confidential informant, Osama Eldawoody; and the New York City police detective supervising him, Steven Andrews; an undercover New York City police officer identified as Kamil Pasha; and many hours of recordings of conversations between the defendant, the cooperating witness, and the confidential informant. The evidence, viewed in the light most favorable to the prosecution, not only established all the elements of the crimes charged, but it also amply established that defendant was predisposed to commit the crimes charged beyond a reasonable doubt.

Before addressing the evidence of predisposition, I note that defendant's evidence of inducement at trial was scant. The only evidence defendant offered on this subject was his own testimony that the confidential informant constantly talked to him about the war in Iraq and inflamed his anger against the United States and its treatment of Muslims, for example, by showing him pictures of the prisoners at Abu Ghraib. It is questionable whether the statements relied upon by defendant are properly viewed as "soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged." Moreover, defendant's testimony was rebutted by the undercover officer's testimony that defendant discussed the same types of issues before meeting the confidential informant. *See* Trial Tr. at 3269-73. Most importantly, the defendant's own testimony

4

(as well as the testimony of the cooperating witness and the confidential informant and the recordings) established that it was the defendant who originated the plan to blow up the 34th Street subway station, that is, it was the defendant who originated "the criminal design" and not the government.[1]

With respect to predisposition, the evidence in the government's direct case proved not only the existence of a course of conduct by defendant similar to the crimes of which defendant was charged, but it proved that, even if inducement had occurred, defendant was ready and willing to commit the crimes. The evidence of predisposition came, in the government's direct case, through the testimony of cooperating witness James Elshafay and of the confidential informant, through the recordings of defendant's statements, and, in the government's rebuttal case, through the testimony of the undercover officer, Kamil Pasha, regarding defendant's statements. To restate all the evidence introduced at trial relevant to predisposition would be impractical and is unnecessary; the following is sufficient to decide defendant's motion.

Elshafay testified that defendant made statements indicating his willingness to do a bombing in New York City as revenge for America's ill treatment of Muslims. Trial Tr. at 1973-76. Elshafay also testified that when he told defendant of his plan to blow up the bridges connecting to Staten Island, defendant stated he would see what he could do to get the plan going. Trial Tr. at 1976. Elshafay's testimony, which was not contradicted by defendant, established that defendant

---

[1] The government did not argue that there was no inducement as a matter of law at trial, and thus this court had no occasion to decide the issue at that time. The court need not decide whether defendant failed to meet his burden as to inducement, as the government now argues, because the issue was submitted to the jury, and the evidence was sufficient for a jury to find that the government had met its burden of proving predisposition beyond a reasonable doubt.

5

participated actively in analyzing and refining the plan Elshafay proposed. Elshafay's plan was eventually abandoned when, as defendant himself testified, defendant came up with the plan to blow up the 34th Street subway station. The recordings of defendant's statements regarding the 34th Street subway plan also showed that defendant was the principal designer of the plan. He surveyed the 34th Street subway station with Elshafay and the confidential informant, as well as on his own, in order to determine where best to place bombs and how to avoid detection. In addition, during the government's rebuttal case, the undercover officer testified that defendant made statements, before he met the confidential informant, that he supported and, under the right circumstances, was willing to engage in a revenge bombing. *See, e.g.,* Trial Tr. at 3270-71. Unlike *Jacobson*, 503 U.S. at 551, where the Court held that the conduct in which the defendant expressed interest was insufficient to prove predisposition because the conduct was legal at the time, here the conduct defendant expressed interest in was illegal at the time he made the statements. Trial Tr. at 3522-23. Thus, defendant's argument that the undercover officer's testimony was, "for the most part," testimony about defendant's particular political point of view and did not include statements by defendant tending to show a willingness to engage in the type of conduct charged is incorrect.

In sum, the jury could have concluded that there was no evidence of inducement. However, even if it found inducement, there was ample evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant was predisposed to commit the crime. Accordingly, defendant's motion for entry of a judgment of acquittal pursuant to Rule 29 is denied.

**II.     Rule 33 Motion**

    **A.     Motion for a New Trial In the Interests of Justice**

Defendant moves for a new trial pursuant to Rule 33 on four grounds: (1) lack of pre-trial

discovery of the defendant's statements made to the undercover officer; (2) the admission of the testimony of the undercover officer and the government's arguments based on such testimony; (3) the court's response to the jury's question regarding the word "ready" in the jury charge; and (4) the improper admission of bad character evidence.

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). In other words, a court may set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice. *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). A trial court must exercise its Rule 33 authority sparingly and in only the most extraordinary circumstances. *Id*. at 134. "There must be a real concern that an innocent person may have been convicted." *Id*.

### 1. *Rule 16*

Defendant was not entitled to discovery of statements he made to undercover officer Kamil Pasha under Rule 16.

Rule 16(a)(1)(A) provides that "the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person *the defendant knew was a government agent* if the government intends to use the statement at trial." FED. R. CRIM. P. 16(a)(1)(A) (emphasis added). As the court in *United States v. Viserto* stated, "[a] non-recorded conversation [o]verheard by a Government agent whose presence is *not known* does not come within [this provision]." 596 F.2d 531, 538 (2d Cir. 1979) (emphasis added).² Defendant admitted he did not know the undercover officer was a government

---

² Defendant provides no legal support for his argument that Rule 16 violates his constitutional rights because it makes an "arbitrary distinction" between those defendants who know when they are communicating with a government agent and those who do not. His

7

agent. Thus, according to the plain terms of the rule, defendant was not entitled to discovery of his statements.

Similarly, defendant was not entitled to any discovery pursuant to Rule 16(a)(1)(B)(i). Rule 16 (a)(1)(B) states:

> (B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> (i) *any relevant written or recorded statement by the defendant* if:
>
> • the statement is within the government's possession, custody, or control; and
>
> • the attorney for the government knows--or through due diligence could know-- that the statement exists;
>
> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
>
> (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

FED. R. CRIM. P. 16 (emphasis added). In *In re United States*, 834 F.2d 283, 284-86 (2d Cir. 1987), the Second Circuit held that oral statements made by defendants to persons other than known government agents, which have been documented at some point, in one form or another, are not discoverable as "written or recorded statements" made by the defendant. The court in *In re United States* relied primarily on the holding of *Viserto* that a police officer's notes of a conversation by the defendant were not discoverable under the "written or recorded statement" provision because the statement was memorialized originally only in the recollection of the officer; no written record was

---

argument is rejected.

contemplated when the statement was made; and the notes were merely a hasty reminder of what was said. *Viserto*, 596 F.2d at 538. The court in *United States v. McClure*, 734 F.2d 484, 493 (10th Cir. 1984), in explaining the difference between "written and recorded statements" and oral statements, illustrates that the defendant's statements in the instant case do not fall within the "written or recorded statements" subsection of Rule 16(a)(1)(B):

> [Rule 16] makes a clear distinction between written/recorded statements and oral statements. The latter may be discovered only when made in response to interrogation by known government agents. In our view, the statements sought to be discovered were clearly "oral statements," even though they were subsequently summarized by the agents. In order for any statement, oral or written, to be discoverable, it would appear that the statement must in some manner be recorded; a defendant would be hard pressed to discover the ears of an interrogating officer. The mere fact of summarizing an oral statement could surely not transform it into a written/recorded statement; to hold otherwise would render meaningless the distinction between oral and written statements under the rule. Such oral statements may be discovered only when they are made "in response to interrogation by any person then known to the defendant to be a government agent."

Here, according to his testimony, the undercover officer heard the oral statements by the defendant and reported back to another officer, via either e-mail or orally, his recollection of defendant's oral statements. The detective to whom the undercover officer reported then put the substance of the undercover officer's reports into written form. *See* Trial Tr. at 3366-67, 3375. Thus, defendant was not entitled to discovery of his statements made to the undercover officer under Rule 16(a)(1)(B)(i).

Defendant's argument that the cases decided prior to the 1991 amendment to Rule 16 do not adequately account for the expanded scope of discovery provided for by the amendment is irrelevant because the 1991 amendment did not expand the scope of discovery under subsection 16(a)(1)(B)(i). Rather, the amendment provided for expanded discovery under subsection 16(a)(1)(B)(ii). Before the amendment, the government was required to disclose a defendant's written or recorded oral statement only if it intended to use the statement at trial. However, the amended subsection now

9

requires the government to disclose the statement whether or not it intends to use the statement at trial. *See* FED. R. CRIM. P. 16 advisory committee notes to 1991 Amendment ("The rule now requires the prosecution, upon request, to disclose any written record which contains reference to a relevant oral statement by the defendant which was in response to interrogation, *without regard to whether the prosecution intends to use the statement at trial*." (emphasis added)). Accordingly, there was no Rule 16 violation warranting a new trial.

### 2. *Undercover Officer's Testimony*

As I ruled at trial, the undercover officer's testimony was admissible to rebut defendant's claim that he was a nonviolent person and that he was induced by the confidential informant. Trial Tr. at 3262, 3522. The undercover officer's testimony regarding certain statements made by defendant was also admissible as predisposition evidence. Trial Tr. at 3522-24.

Defendant's argument at trial was that the confidential informant induced him to commit the crimes charged by inflaming him with political discussions on subjects such as the war in Iraq and the treatment of Muslims here and abroad by America and its allies and by showing him pictures of prisoner abuse at Abu Ghraib. Defendant testified that he did not talk about terrorism or anything like that until he met the confidential informant. In contrast, the undercover officer testified to conversations with the defendant occurring before the defendant met the confidential informant in which defendant made statements supporting violent and terrorist activities, including statements that he supported suicide bombings, under some circumstances, and Osama Bin Laden. Trial Tr. at 3306-12, 3327-28. Specifically, the undercover officer testified that defendant said that he wanted to see more bombings in the United States and that Osama Bin Laden was a great planner and that he hopes Bin Laden plans something big for America. Trial Tr. at 3312, 3327. This testimony

directly rebutted defendant's argument of inducement by showing that defendant in fact discussed the subjects he claimed he learned from the confidential informant before he actually met the confidential informant.

The undercover officer's testimony was also admissible as evidence to rebut defendant's claim that he was a nonviolent person. During his opening statement, defense counsel argued that, before meeting the confidential informant, defendant was a peaceful person who deplored violence. In addition, the defense called defendant's mother to testify at trial regarding his character. She testified that defendant earned good grades in school, did not get into any fights, and had a kind-hearted nature. The undercover officer's testimony that defendant frequently boasted of committing violent acts and regularly expressed his support for violent terrorist acts directly rebutted this argument. *See* Trial Tr. at 3272, 3315-16, 3269, 3272. For example, the undercover officer testified that defendant said he had killed two people in Pakistan, that defendant got into a fight in the bookstore in which he worked, and that defendant carried a knife in the event that a certain individual gave him problems. Trial Tr. at 3272, 3315-16.

Also, insofar as the undercover officer's testimony regarding defendant's statements showed defendant's predisposition, as discussed above, it was admissible for that purpose. However, the court barred the government from arguing to the jury that defendant's statements showing his prior violent conduct, general support of terrorist activity, and predictions of terrorist attacks in the United States showed that he was predisposed to commit the crimes charged. Trial Tr. at 3521-25. For example, the court ruled that defendant's statements that, if America went to war in Iraq, it would lead to terrorist attacks, did not show defendant's predisposition. Trial Tr. at 3524.

After reviewing the government's summation and rebuttal summation, the court remains

satisfied that the government adhered to the court's rulings as to which of defendant's statements to the undercover officer could be used to rebut inducement and defendant's claim that he was a nonviolent person before the alleged inducement and which could be used to show defendant's predisposition. Indeed, the defense did not make any objections during this portion of the government's summation.

Defendant's argument that the undercover officer's testimony as to his statements was not proper predisposition evidence because the statements occurred after he met the undercover officer is unsound. A defendant's "predisposition refers to the state of mind of a defendant *before government agents make any suggestion that he should commit a crime*." *United States v. Williams*, 705 F.2d 603, 618 (2d Cir. 1983) (emphasis added). Throughout the trial, defendant maintained that he was induced by the confidential informant, not the undercover officer, to commit the crimes charged. There was never any suggestion that the undercover officer ever induced any of the crimes charged. In fact, defendant expressly testified that the undercover officer never mentioned anything having to do with the crimes charged. Trial Tr. at 3159. Thus, the point in time at which to measure predisposition was when defendant argues the confidential informant induced him, which was undisputedly after defendant made the statements at issue to the undercover officer.

Contrary to defendant's assertion, the undercover officer's testimony was not a "free-for-all attack" on defendant's character as defendant claims; rather, it was proper rebuttal evidence. As the Court in *Sorrells* stated: "if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense." 287 U.S. at 451-52. The government was entitled to rebut the

12

evidence presented by the defense, and it did so appropriately, while adhering to the court's rulings.

Defendant also argues that allowing the undercover officer's testimony raises "considerable First Amendment concerns" by criminalizing legitimate political discourse. However, even if the undercover officer testified to statements made by defendant that may be described as reflecting defendant's political views, those statements were properly admitted as discussed above. That defendant's statements contain political expression does not insulate defendant from their use at trial where the statements also rebut his testimony and prove predisposition. *See* Trial Tr. at 3522.

I also reiterate that the probative value of the undercover officer's testimony was not substantially outweighed by the risk of undue prejudice. Trial Tr. at 3262. At trial, the defendant admitted his own plans to blow up several stations and bridges and admitted that he also supported other terrorist activities. Thus, the undercover officer's testimony was highly probative and was not likely to unduly inflame the jury.

### 3. *Response to Jury Notes*

The court's response to two jury notes requesting the definition of the word "ready," as used in the entrapment instruction, was proper.

On May 24, 2006, the jury requested the definition of the word "ready" in the context of paragraph one, on page twenty four of the jury charge.[3] Trial Tr. at 3890. The court instructed the

---

[3] Paragraph one of page twenty four of the court's instruction on the defense of entrapment reads in its entirety:

> The law permits government agents to trap a willing, unwary criminally-minded person. The law does not permit a government agent to entrap an unwilling, unwary innocent person. Thus, a defendant may not be convicted of a crime if it was a government agent who not only gave the defendant the idea to commit the crime, but also persuaded him to commit a crime that he was not predisposed, that is, ready and willing, to commit. On the other hand, if the defendant was ready and willing to

13

jury:

> The term "ready" is part of the phrase "ready and willing," which is simply another way of saying "predisposed." As my instructions state, predisposition to commit a crime can be shown in a variety of ways, and it is sufficient that the government [prove] beyond a reasonable doubt that the defendant is of a frame of mind such that, when his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own independent choice or preference and not the product of persuasion by a government agent.
>
> I remind you that the instructions need to be viewed as a whole and that the entire entrapment instruction appears on pages twenty three to twenty six of the charge.

Trial Tr. at 3890-91. While the defense suggested that the court respond to the jury's query with the definition of the word "ready" as provided in Webster's Second International Dictionary and Black's Law Dictionary, such a response would have been misleading because the word "ready" is part of the phrase "ready and willing," which the Second Circuit has approved to convey to the jury the predisposition element of entrapment. *See Williams*, 705 F.2d at 618 (discussing the predisposition element of the entrapment defense and stating that "[t]he phrase 'ready and willing' adequately captures that concept and does so in a manner likely to be comprehensible to juries"). Thus, the jury's question was regarding the predisposition element of entrapment, and the proper course was to instruct the jury on the predisposition element of the entrapment defense, as the court did. In responding to the jury's question, the court adhered to the Second Circuit's directions with respect to predisposition. *See United States v. Dyman*, 739 F.2d 762, 770 (2d Cir. 1984) ("We have, on several occasions, approved the use of the phrase 'ready and willing' to convey to a jury the requirement that, once defendant's attention is called to the opportunity to commit a crime, the

---

violate the law, and the government agent merely presented him with the opportunity or facilities to do so, that would not be entrapment.

Trial Tr. at 3770.

decision to commit the offense be shown to be his own choice and 'not the product of Government persuasion.'"); *Williams*, 705 F.2d at 618 ("It is sufficient if the defendant is of a frame of mind such that once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion.").

Defendant's argument that the court's response conflated the concepts of inducement and predisposition and impermissibly shifted the burden of proof to the defense is without merit. The court was careful not to confuse the jury as to who bore the burden of proof on the predisposition element by specifically instructing the jury that the government bore the burden of proving predisposition beyond a reasonable doubt. Moreover, the court directed the jury that it should consider the entrapment instruction as a whole, and that instruction clearly stated that the burden was on the government to prove predisposition beyond a reasonable doubt. *Cf. Williams*, 705 F.2d at 618-19 (concluding that the court's erroneous statement in responding to a jury note did not warrant reversal because, *inter alia*, the erroneous statement was followed by a rereading of the full charge on entrapment, which correctly set forth the applicable principles).[4]

### 4. *Effect of Cumulative Aggregation of Bad Character Evidence*

Defendant, citing no case law, broadly argues that the cumulative aggregation of bad character evidence tainted the jury and violated his First, Fifth, and Sixth Amendment rights, as well as Rules 402, 403, 404(a)(1) & (b) of the Federal Rules of Evidence. Defendant's bases for this argument are conclusory and without merit.

---

[4] In a footnote, defendant points to an article in the *New York Times* as evidence that the jury was confused about the burden of proof in finding entrapment. But the statements made by the jurors in this case to the press may not be considered by this court in deciding defendant's motion. *See* FED. R EVID. 606(b).

First, the government's cross-examination of defendant regarding statements he made to the undercover officer was proper. The defendant testified that he was a nonviolent person who disapproved of terrorist activity before he met the confidential informant. The government was entitled to rebut such testimony by questioning him regarding statements he made to the undercover officer as described above. Thus, the testimony of the undercover officer was properly admitted for the same reason.

Second, the court properly denied defendant's motion for a mistrial based on references to HAMAS, HAMAS leaders, al Qaeda, and other purported supporters of violent jihad because defendant opened the door to such evidence. In his opening statement, defense counsel argued that the New York City Police Department used illegal or inappropriate law enforcement tactics, including the use of a confidential informant. He also suggested, both in his opening statement and in questioning the confidential informant, that Detective Andrews, the detective supervising the confidential informant, had an incentive to entrap defendant because the investigation had not yielded any fruitful evidence of terrorist activity. In response to defendant's arguments, the government properly elicited testimony that the work of Detective Andrews and the confidential informant had yielded useful information related to terrorist activity, showing that there was no such incentive to entrap defendant. The court gave an instruction to the jury limiting the way in which it could use the evidence containing references to HAMAS, HAMAS leaders, al Qaeda, and other purported supporters of violent jihad. Specifically, the court stated:

> During the course of the trial, you heard evidence regarding the interest of the NYPD Intelligence Division in certain individuals or activities considered of interest to investigations of terrorism.
>
> This evidence has been admitted for the limited purpose of providing background as to the reasons for the investigations and the methods employed.

16

> The defendant, Mr. Matin, is not charged with being affiliated with any of these alleged terrorist individuals, group or organizations, and, therefore, the evidence should not be considered by you to be evidence that he is so affiliated.

Trial Tr. at 2518. In addition, testimony as to defendant's support of Osama Bin Laden was admissible as to the entrapment defense. It was also admissible to impeach defendant's testimony that he did not support terrorist activity or Osama Bin Laden before meeting the confidential informant.

Defendant argues that the court improperly allowed the government to offer testimony that defendant supported violence against Jewish people. The evidence was properly admitted. The government's direct case consisted of recorded conversations during which defendant discussed his plan to blow up the 34th Street subway station. In those recordings, in addition to describing his ideas for bombing bridges and attacking military bases, defendant also made statements supporting violence against Jewish people. Defendant did not object to the admission of those recordings. In any event, such evidence was admissible to rebut defendant's claim that he was a nonviolent individual.

Finally, the evidence of books and videotapes supporting jihad or terrorism was properly admitted to rebut defendant's testimony that he was induced by the confidential informant. Elshafay testified that, prior to defendant meeting the confidential informant, defendant recommended that he purchase a book entitled *The New World Order*, which advises the Muslim mujahideen to fight a war against Western capitalism and the world's power brokers. Thus, the book was admissible to show defendant's state of mind before he met the confidential informant and to show the nature of the relationship between the two coconspirators, defendant and Elshafay. Elshafay also testified that he purchased a book entitled *Jihad*, which advises that jihad involves violent attacks on

17

nonbelievers, from the bookstore where defendant worked and that he read the book before he or defendant met the confidential informant. Thus, the book was admissible to rebut defendant's contention that the confidential informant introduced him and Elshafay to violent jihad. Lastly, the undercover officer's testimony that, before defendant met the confidential informant, defendant gave the undercover officer a video entitled *Illuminazi 9/11*, which contains images of terrorist attacks and the murder of civilians and which blames those atrocities on the U.S. government, was admissible to disprove defendant's contention that the confidential informant induced him to commit the charged crimes by exposing him for the first time to images of the murder of civilians and to allegations that the U.S. government was responsible for such atrocities. In addition, the defendant mentioned the video *Illuminazi 9/11* in the recordings admitted into evidence, stating that the man who made the movie was killed, without objection by the defense.

Based on the foregoing, there is no sound support for defendant's motion for a new trial in the interests of justice. Accordingly, defendant's motion is denied.

### B. Motion for a New Trial Based on Newly Discovered Evidence

Rule 33 of the Federal Rules of Criminal Procedure provides that a defendant can make a motion for a new trial based on "newly discovered evidence." FED. R. CRIM. P. 33(b). To prevail on such a motion, a defendant must show that the evidence: (1) is in fact new, i.e., it could not have been discovered, exercising due diligence, before or during trial; (2) is material and non-cumulative; and (3) would probably have led to an acquittal if admitted. *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992). A motion for a new trial based on "newly discovered" evidence is not favored, and a district court may grant the motion only in the most extraordinary circumstances. *United States v. Diaz*, 176 F.3d 52, 106 (2d Cir. 1999).

The "newly discovered" evidence alleged by defendant is contained in an undated letter, filed with the court and provided to defendant on September 1, 2006, from the confidential informant, Osama Eldawoody, to Senator Hillary Rodham Clinton. In the letter, the confidential informant states, in relevant part:

> While I was working on the case, when it became very serious in April/04, I met the Detective more than 5 times to make sure [h]ow my life is [sic] going to be after the cas[e] is over[. H]e promised me the Greatest life financially and securing our life [sic] and not to release my name to the media.

Defendant argues that the financial promises made to the confidential informant were never revealed to the defense, that those promises provided the confidential informant with a financial incentive to curry favor with the government, and that they coincided with the period in which the defense alleges the confidential informant "ramped up his efforts" to turn defendant into someone who would be willing to engage in violent conduct.

However, the alleged newly discovered evidence is not in fact new. Both the government and the defense elicited testimony during the trial regarding payments Eldawoody received for acting as a confidential informant. Specifically, the government elicited testimony from the confidential informant and from Detective Andrews that the confidential informant was paid approximately $100,000, as well as ongoing relocation and living expenses, and that he was promised assistance in finding another job. *See, e.g.,* Trial Tr. at 544, 551, 990, 2189-95, 2207-08. The defense also elicited testimony from the confidential informant and Detective Andrews regarding the payments made to the confidential informant. *See, e.g.,* Trial Tr. at 1037-38, 1048, 1088-89, 1100-03, 1113-14, 1133-34, 1138, 1167, 1181-82, 1200, 1307-08, 1323-24, 2261, 2278, 2294, 2299, 2359-60, 2459-61. In addition, while questioning both the confidential informant and Detective Andrews, defense counsel had an opportunity to discover evidence of any additional

19

promises made to the confidential informant regarding compensation or security. Indeed, when defense counsel asked Detective Andrews whether he had made assurances to the confidential informant that his financial situation would improve, Detective Andrews was forthcoming and replied that he had. Trial Tr. at 2459-61.

For the same reasons, while the alleged newly discovered evidence deals with a material subject, it is entirely cumulative. There was testimony by both the confidential informant and Detective Andrews regarding the financial support the confidential informant was getting while cooperating with the authorities. Based on that, the defense made the argument during summation that it makes now with respect to the evidence contained in the letter–that the confidential informant had a financial incentive to curry favor with the government. Trial Tr. at 3671-72.

In any event, in light of the strength of the evidence against defendant, the letter by the confidential informant, even if viewed as containing newly discovered evidence, would not have led to the defendant's acquittal had it been presented at trial. The evidence at trial as to defendant's guilt was overwhelming. Accordingly, defendant's motion for a new trial based on newly discovered evidence is denied.

        **SO ORDERED.**

        _____/s/_____
        **NINA GERSHON**
        **United States District Judge**

Dated: January 4, 2007
     Brooklyn, New York